**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
IOWA CENTRAL DIVISION**

| | |
|---|---|
| JEANNETTE E. LEEPS,<br><br>PLAINTIFF,<br><br>vs.<br><br>LENDERLIVE NETWORK, INC.,<br><br>DEFENDANT. | **Civil Action No.**<br><br>**COMPLAINT and DEMAND FOR JURY TRIAL** |

NOW COMES the Plaintiff, Jeannette E. Leeps ("Plaintiff" or "Leeps") by and through her attorney, L. Ashley Zubal, and for her Complaint against the Defendant, LenderLive Network, Inc. (hereinafter "Defendant" or "LenderLive"), alleges as follows:

### I.   INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq, (hereinafter "FDCPA") and the Iowa Debt Collection Practices Act, § 537.7103, et seq, (hereinafter "IDCPA") which prohibit debt collectors from engaging in abusive, deceptive, and unfair collection practices.

### II.   JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.  Venue in this District is proper in that the Defendant transacts business in Iowa and the conduct complained of occurred here.

### III.   PARTIES

3. Plaintiff, Jeannette Leeps, is a natural person residing in Clarke County, Iowa.

4. Defendant, LenderLive is a business principally located in Colorado who is engaged in the collection of debts owed to another in the State of Iowa.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3). Plaintiff is a "debtor" as that term is defined by Iowa Code § 537.7102(6).

6. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Iowa Code § 537.7102(5).

### IV.   FACTUAL ALLEGATIONS

7. At some point in time, the Plaintiff incurred a financial obligation to American State Bank that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Iowa Code § 537.7102(3).

8. Sometime thereafter, the debt was sold, assigned, or otherwise transferred to the Defendant for collection, when thereafter the Plaintiff began receiving collection communications from the Defendant in an attempt to collect this debt.

*Correspondence Dated January 13, 2012*

9. The Plaintiff received correspondence from the Defendant dated Janaury 13, 2012.

10. Said correspondence advised the Plaintiff in part that ISERVE SERVING, INC transferred the servicing of the Plaintiff's mortgage loan to a processing center at LenderLive Network, Inc. with a new loan number ending in 8844.

11. Said correspondence also referenced the mortgage with collateral located at 829 Maple Street, Murray, IA 50174.

12. Said correspondence indicated the Plaintiff was liable to the Defendant on said mortgage in the amount of $38,768.15 and requested the Plaintiff contact the Defendant immediately to arrange for payment.

### *Correspondence Dated February 03, 2012*

13. The Plaintiff received correspondence from the Defendant sometime in February, 2012 which was dated February 03, 2012. Said correspondence again advised the Plaintiff that the Defendant had purchased the mortgage attached to property located at 829 Maple Street, Murray, IA 50174.

14. The correspondence offered the Plaintiff three options with regard to the delinquent mortgage. First, that the Defendant would be willing to modify the Plaintiff's mortgage terms. Second, that the Defendant would assist the Plaintiff in negotiating a short sale on the property. Third that the Plaintiff, if unable to consider the first two options, may choose to deed the property to the Defendant.

15. The Defendant disclosed twice in the correspondence that should the Plaintiff fail to exercise one of the three options she would be at risk of losing the home in foreclosure and having foreclosure status reported on her credit reports.

16. As a result of said correspondence, the Plaintiff felt emotional distress, fear, anxiety, nervousness, stress, loss of sleep, and anger.

17. This correspondence from Defendant was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692f, 1692f(6)(A), amongst others.

18. This correspondence from Defendant was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(c), 537.7103(1)(f), 537.7103(1)(e), 537.7103(4), 537.7103(4)(e), amongst others.

### *Call in March, 2012*

19. Sometime during March, 2012, the Plaintiff received a call from a representative of the Defendant named Jeremy. Jeremy was calling the Plaintiff in an attempt to collect a debt.

20. Jeremy advised the Plaintiff that he was calling with regard to a delinquent mortgage account attached to property located at 829 Maple Street, Murray, IA 50174. Jeremy stated that LenderLive would like to work with the Plaintiff and had an offer that would assist the Plaintiff in keeping her property.

21. Jeremy offered to lower the payments on the mortgage by extending the length of the mortgage but would require $300.00 down at the time the new mortgage or refinance was executed.

22. The Plaintiff explained to Jeremy that the property in question had been sold at a tax sale in 2006 and, because the mortgage company did not redeem the taxes, the property was later acquired by an asset company. She further explained that her son, Brandon Campbell, purchased the property from the asset company on or about July 15, 2010.

23. The Plaintiff stated that the property was no longer hers and was now titled in her son's name.

24. Jeremy then responded that it did not matter whose name the property was in that they could foreclose on the property and take possession of the property.

25. The Plaintiff again stated that she believed that her son had legitimately purchased the property from the asset company but stated she would need to look into the situation and get back to Jeremy.

26. As a result of the March, 2012 collection call, the Plaintiff felt emotional distress, fear, anxiety, embarrassment, humiliation, nervousness, stress, loss of sleep, headaches, and anger.

27. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692e(11), 1692f, 1692f(6)(A), amongst others.

28. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(1)(e), 537.7103(4), 537.7103(4)(b), 537.7103(4)(e), amongst others.

### *Second Call in March, 2012*

29. Within a few days of the initial collection call from the Defendant's representative Jeremy, the Plaintiff received a second call from Jeremy who was contacting the Plaintiff in an attempt to collect a debt.

30. The Plaintiff advised Jeremy that she did not have the $300.00 for the down payment required for the refinance to take place.

31. Jeremy again explained to the Plaintiff that she needed to take care of the situation because if she did not agree to a refinance or a settlement on the mortgage balance, the Defendant would foreclose and take possession of the

property. Jeremy further repeated that it did not matter whose name the property was in.

32. The Plaintiff stated that she would see what she could do and get back to Jeremy.

33. That day when the Plaintiff came home she explained the communications to her son, Brandon Campbell. Brandon became distraught over the Defendant's representation with regard to retaining the right to foreclose on the property.

34. As a result of the second March, 2012 collection call, the Plaintiff felt emotional distress, fear, anxiety, embarrassment, humiliation, nervousness, stress, loss of sleep, headaches, and anger.

35. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692e(11), 1692f, 1692f(6)(A), amongst others.

36. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(1)(e), 537.7103(4), 537.7103(4)(b), 537.7103(4)(e), amongst others.

### *Voice Message on or about April 09, 2012*

37. On or about April 09, 2012, the Plaintiff received a voice message from Defendant's representative Jeremy. The representative was contacting the Plaintiff in an attempt to collect a debt.

38. Jeremy stated that he was calling on behalf of LenderLive with regard to the property located at 829 Maple Street, Murray, IA 50174 and requested the Plaintiff call him back at 214-466-6714.

39. This call on this occasion from Defendant's representative was a collection communication in violation of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(11), 1692f, amongst others.

40. This call on this occasion from Defendant's representative was a collection communication in violation of the IDCPA, including but not limited to Iowa Code §§ 537.7103(4)(b), amongst others.

### *Third Call on or about April 13, 2012*

41. On or about April 13, 2012, the Plaintiff contacted the Defendant's representative Jeremy and explained that she was still confused about the terms of the refinance and requested Jeremy review them with her.

42. Jeremy stated that the situation between the Plaintiff and the Defendant was that there was still an outstanding mortgage owed by the Plaintiff. He stated that despite the title and tax issues the mortgage was still due and owing.

43. Jeremy explained that the original mortgage was in the amount of $52,500 and the current balance was $38,768. He stated that the Defendant would agree to lower the balance of the mortgage 40% to $23,500 with 8% interest over 20 years, lowering to a principal and interest payment in the amount of $194.05 and escrow in the amount of $100, with a down payment of $300.00.

44. The Plaintiff asked what would happen if she could not agree to those terms.

45. Jeremy advised that it was a sticky situation because Brandon was the deed holder but despite that the Defendant would be able to foreclose on the property, regardless of title, because the Defendant held the first lien position and again stated the Defendant would have a right to foreclose unless the Defendant was paid off and title was placed in the Defendant's name.

46. The Plaintiff advised that she would have to look into whether she could afford the terms.

47. As a result of the third communication on April 13, 2012, the Plaintiff felt emotional distress, fear, anxiety, nervousness, stress, loss of sleep, and anger.

48. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(2)(A), 1692e(4), 1692e(5), 1692e(10), 1692f, 1692f(6)(A), amongst others.

49. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(1)(e), 537.7103(4), 537.7103(4)(e), amongst others.

### *Voice Message on or about April 19, 2012*

50. On or about April 19, 2012, the Plaintiff received a voice message from Defendant's representative Jeremy. The representative was contacting the Plaintiff in an attempt to collect a debt.

51. Jeremy stated that he was calling on behalf of LenderLive with regard to the property located at 829 Maple Street, Murray, IA 50174, that he wanted to touch

base with regard to the modification of the note and requested the Plaintiff call him back at 214-466-6714.

52. This call on this occasion from Defendant's representative was a collection communication in violation of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e(11), 1692f, amongst others.

53. This call on this occasion from Defendant's representative was a collection communication in violation of the IDCPA, including but not limited to Iowa Code §§ 537.7103(4)(b), amongst others.

### *Voice Message on or about April 24, 2012*

54. On or about April 19, 2012, the Plaintiff received a voice message from Defendant's representative Jeremy. The representative was contacting the Plaintiff in an attempt to collect a debt.

55. Jeremy stated that he was calling on behalf of LenderLive with regard to the property located at 829 Maple Street, Murray, IA 50174, that he wanted help the Plaintiff be able to keep the home and requested the Plaintiff call him back at 214-466-6714.

56. This call on this occasion from Defendant's representative was a collection communication in violation of the FDCPA, including but not limited to 15 U.S.C. §§ 1692(e)(2)(A); 1692e(4); 1692e(5); 1692e(10); 1692e(11), 1692f, amongst others.

57. This call on this occasion from Defendant's representative was a collection communication in violation of numerous and multiple provisions of the IDCPA, including but not limited to Iowa Code §§ 537.7103(1)(f), 537.7103(1)(e), 537.7103(4), 537.7103(4)(b), 537.7103(4)(e), amongst others.

### *Respondeat Superior Liability*

58. The acts and omissions of the Defendant and its representatives employed as agents by Defendant LenderLive who communicated with Plaintiff as more further described herein, were committee within the time and space limits of their agency relationship with their principal, Defendant LenderLive.

59. The acts and omissions by Defendant LenderLive and its representative were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant LenderLive in collecting consumer debts.

60. By committing these acts and omissions against the Plaintiff, LenderLive and its representatives were motivated to benefit their principal, LenderLive.

61. The Defendant is therefore liable to the Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by the Defendant and its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from the Plaintiff.

**V.  FIRST CLAIM FOR RELIEF: VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**

62. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63. LenderLive, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

64. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

VI.   **SECOND CLAIM FOR RELIEF: VIOLATION OF THE IOWA DEBT COLLECTION PRACTICES ACT (IDCPA)**

65. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. LenderLive, and its agents, through the foregoing intentional and negligent acts and omissions, violated numerous and multiple provisions of the IDCPA

including, but not limited to, each and every one of the above-cited provisions of the IDCPA, Iowa Code § 537.7103 et seq.

67. As a result of each and every Defendant's violations of the IDCPA, Plaintiff is entitled to actual damages pursuant to § 537.5201(1)(y); statutory damages in an amount up to $1,000.00 pursuant to § 537.5201(1)(y); and, reasonable attorney's fees and costs pursuant to § 537.5201(8) from the Defendant herein.

**WHEREFORE,** Plaintiff prays that judgment be entered against the Defendant:

## COUNT II.

## VIOLATIONS OF THE IOWA DEBT COLLECTION PRACTICES ACT

### Iowa Code § 537.7103 et seq.

- For an award of actual damages pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of statutory damages of $1,000.00 pursuant to § 537.5201(1)(y) against the Defendant and for Plaintiff;

- For an award of costs of litigation and reasonable attorney's fees pursuant to § 537.5201(8) against the Defendant and for Plaintiff; and

- For such other and further relief as may be just and proper.

## VII.   JURY DEMAND

The Plaintiff respectfully requests a trial by jury.

                              Respectfully submitted,


                                /s/ L. Ashley Zubal
                              L. Ashley Zubal IS9998256
                              Marks Law Firm, P.C.
                              4225 University Avenue
                              Des Moines, IA 50311
                              (515) 276-7211
                              (515) 276-6280
                              ATTORNEY FOR PLAINTIFF